UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY REY,<br><br>   Plaintiff,<br><br>  v.<br><br>ONEWEST BANK, FSB, et al.,<br><br>   Defendants. | No. 2:12-cv-02078-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Through this action, Plaintiff Gregory Rey seeks redress for a litany of statutory and common law violations arising from the origination of his home mortgage and subsequent foreclosure proceedings. Presently before the Court is Plaintiff's Ex Parte Application for a Temporary Restraining Order and Order to Show Cause filed on December 4, 2012. (ECF No. 22). On December 5, 2012, Defendants filed an opposition to Plaintiff's Application and requested that the Court take judicial notice of certain documents.[1] (ECF No. 24.) For the reasons that follow, Plaintiff's Ex Parte Application is DENIED.

---

[1] The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001). The documents attached as exhibits to Defendants' Request for Judicial Notice ("RJN") are judicially noticeable public documents. Plaintiff has neither objected to Defendants' RJN nor challenged the authenticity or accuracy of any of the attached documents. Accordingly, Defendant's RJN is GRANTED.

# BACKGROUND[2]

The facts relevant to Plaintiff's Ex Parte Application are as follows. In May 2006, Plaintiff obtained a mortgage from American Mortgage Network, Inc. ("American"), secured by a Deed of Trust in the amount of $373,104.00 for Plaintiff's primary residence located in Escalon, California. Defendant OneWest is the current owner of Plaintiff's Loan, through Assignment recorded on June 21, 2010. Plaintiff alleges OneWest is a successor in interest to American and is thus liable for American's wrongdoing.

According to Plaintiff, the original lender committed fraud when it misrepresented the terms of the Loan to Plaintiff and misstated Plaintiff's income on the Loan application. In particular, Plaintiff alleges that Defendants failed to disclose to him the following material terms of the Loan: (1) the Loan was not a 30-year fixed interest loan, but a 10-year interest only fixed mortgage loan; (2) the Loan would result in a significant loss of equity in Plaintiff's home causing Plaintiff to owe more money than he did at the outset of the Loan; and (3) the monthly payments would increase beginning in the eleventh year of the Loan. However, the Note, which Plaintiff signed in May 2006, clearly states on its first page "INTEREST ONLY FIXED RATE NOTE." (FAC, Ex. F.) Plaintiff's obligation to repay the Loan was expressly established in the Note as follows: (1) Plaintiff was to pay interest only of $2,020.98 for the first ten years; and (2) beginning on June 2016 and continuing until June 2036, Plaintiff was to pay principal and interest in the amount of $2,781.77. In May 2006, Plaintiff also signed a TILA Disclosure Statement which set forth the above payment schedule, and which Plaintiff acknowledged he had read and received. (FAC, Ex. G.) However, despite these explicit disclosures of the Loan terms in the Note and TILA Disclosure Statement, Plaintiff claims that he "had no way of uncovering the truth" about the Loan's material terms until October 7, 2011, when the Notice of Trustee's Sale was recorded. (FAC ¶¶ 2, 118.)

---

[2] Unless otherwise noted, the following facts are taken from Plaintiff's First Amended Complaint ("FAC") (ECF No. 8.)

In August 2008, when it became "apparent" to Plaintiff that he would not be able to continue making payments on the Loan, Plaintiff called IndyMac Bank, FSB ("IndyMac") which, as alleged, was the servicer of Plaintiff's Loan, seeking assistance in avoiding foreclosure. (Id. ¶ 34.) On October 8, 2002, Plaintiff received a letter stating that he was approved for a repayment plan with IndyMac. Subsequently, on September 23, 2010, Plaintiff received a letter from IndyMac, stating that OneWest had approved Plaintiff's Loan modification. Plaintiff agreed to the modification terms, signed the agreement and sent it back to OneWest as directed. Plaintiff made the payments for four months, but then allegedly lost his job and again defaulted on the Loan. Plaintiff contacted OneWest and asked for a new loan modification. After a lengthy review of Plaintiff's application, OneWest denied Plaintiff's loan modification request on November 1, 2011.

**STANDARD**

Issuance of a temporary restraining order as a form of preliminary injunctive relief is an extraordinary remedy, and Plaintiff has the burden of proving the propriety of such a remedy by "a clear showing." See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order is the same as that required for a preliminary injunction. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To prevail, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008).

///

///

///

1  Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs
2  demonstrate the requisite likelihood of irreparable harm and show that an injunction is in
3  the public interest, a preliminary injunction can still issue so long as serious questions
4  going to the merits are raised and the balance of hardships tips sharply in Plaintiffs'
5  favor.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## ANALYSIS

Plaintiff argues that he is eligible for emergency equitable relief because he is likely to succeed on the merits of his fraud in the origination of the loan claim and the claim for violation of Cal. Civil Code § 2923.5.  (ECF No. 22-1, at 6-7.)

### A.    Fraud in Origination of the Loan

Plaintiff argues that Defendants fraudulently failed to disclose to Plaintiff that the Loan was not a thirty-year fixed mortgage loan as requested by Plaintiff, but a ten-year interest only loan, and also misstated Plaintiff's income on the Loan application documents.  (ECF No. 22-1, at 7.)  As alleged in the FAC, any fraud occurred, if at all, at the time of the Loan origination and was committed by Plaintiff's original lender, American Mortgage Network, Inc. ("American").  (FAC ¶¶ 4, 28.)  Yet, none of the defendants named in Plaintiff's FAC participated in the Loan origination.  Plaintiff appears to allege that Defendant OneWest Bank, FSB ("OneWest") is liable for American's allegedly wrongful acts as a successor-in-interest.  (FAC ¶¶ 49-55.) However, Plaintiff's allegations in this respect are limited to legal conclusions and are not supported by any factual evidence demonstrating that OneWest did assume liability for American's alleged fraud.  As Plaintiff himself pleads, under California law, successor liability may be imposed on a corporation for the debts and liabilities of its predecessor in the following circumstances:

(1) the purchaser expressly or impliedly agrees to such assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; and (4) the transaction is entered into fraudulently to escape liability for debts.  (FAC ¶ 49, citing Ray v. Alad Corp., 19 Cal.3d 22, 28 (1977); Westoil Terminals Co. v. Harper Ins. Co., 73 Cal. App. 4th 634, 638 (1999); Franklin v. USX Corp., 87 Cal. App. 4th 615, 620 (1999).)  Plaintiff has failed to present any evidence demonstrating that any of those four scenarios of successor liability applies in this case.  See Pajarillo v. Bank of America, 2010 WL 4392551, at *2 (S.D. Cal. Oct. 28, 2010) (concluding that a statement that Bank of America "is sued as a successor-in-interest to Countrywide Bank" is insufficient, by itself, to impose liability upon Bank of America); Maine State Retirement System v. Countrywide Financial Corp., 2011 WL 1765509, at *8 (C.D. Cal. Apr.20, 2011) (concluding that a statement in the complaint that the original lender sold "substantially all of its assets" to the defendant is insufficient to plead successor liability without factual allegations in support of the defendant's successor-in-interest status).

      Even were the Court to hold that OneWest is a successor-in-interest to American, Plaintiff's fraud claim is still not likely to succeed because the claim is time-barred. Under California Civil Procedure Code § 338(d), fraud claims are subject to a three-year statute of limitations.  However, under California's discovery rule, the cause of action is not deemed to have accrued until the discovery of the facts constituting the fraud.  Cal. Civ. Proc. Code § 338(d).  California courts have interpreted the discovery element to mean "the discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person to suspect fraud." Doe v. Roman Catholic Bishop of Sacramento, 189 Cal. App. 4th 1423, 1430 (Ct. App. 2010) (citations omitted) (emphasis in the original).  Because "subjective suspicion" is not required, if "a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation."

5

1  McCoy v. Gustafson, 180 Cal. App. 4th 56, 108 (Ct. App. 2009).  Stated another way,
2  the discovery rule only applies when, "despite all due diligence, [a plaintiff] is unable to
3  obtain vital information bearing on the existence of his claim."  Cervantes v. Countrywide
4  Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011) (citations omitted) (emphasis
5  added).  This is not what happened in the instant case.
6      The Note, which Plaintiff signed and which he attached as Exhibit F to the FAC,
7  clearly states "INTEREST ONLY FIXED RATE NOTE."  The Loan terms, which Plaintiff
8  claims had not been disclosed to him by the lender, appear clearly on the face of the
9  pages of the Loan documents that Plaintiff signed or initialed in May 2006.  (FAC Ex. F.)
10 Moreover, when the Loan was originated, Plaintiff also signed a TILA Disclosure
11 Statement which set forth the Loan payment schedule, and which Plaintiff acknowledged
12 he had read and received.  (FAC Ex. G.)  A reasonably diligent person would have read
13 the loan's material terms upon signing, or, at a minimum, after receiving the loan
14 documents.  See Tiqui v. First Nat'l Bank of Ariz., 2010 WL 1345381, *6 (S.D. Cal.
15 Apr. 5, 2010).  "[R]elying on a lender and assuming correctness of the loan documents
16 does not excuse plaintiffs from conducting their own due diligence."  Hawkins v. First
17 Horizon Home Loans, 2010 WL 4823808, at *5 (E.D. Cal. Nov. 22, 2010).  Thus, Plaintiff
18 was put on actual notice of the Loan terms when he signed the Note and TILA
19 Disclosure Statement more than six years prior to filing his lawsuit.  Accordingly,
20 Plaintiff's fraud claim is time-barred.
21     Finally, a necessary element of a fraud cause of action under California law is that
22 "the plaintiff justifiably and reasonably relied on [defendants'] representation."
23 Ragland v. U.S. Bank Nat. Ass'n, 209 Cal. App. 4th 182, 199-200 (2012) (emphasis
24 added).  "[F]raud that should be apparent . . . is not actionable."  Soliman v. Philip Morris
25 Inc., 311 F.3d 966, 975 (9th Cir. 2002).  As stated above, the Note and the TILA
26 Disclosure Statement, both of which Plaintiff signed in May 2006, clearly document the
27 Loan terms that Plaintiff now alleges were concealed from him by the original lender.
28 ///

1  Thus, any fraud on the part of American should have been apparent to Plaintiff at the
2  time he signed the Loan document. For this reason, Plaintiff's "reliance" on Defendants'
3  alleged misrepresentation was neither reasonable nor justifiable.
4  Accordingly, the Court finds that Plaintiff has failed to demonstrate that he is likely
5  to succeed on the merits of his fraud claim or that there are serious questions going to
6  the merits of this claim.

**B.     Violation of California Civil Code § 2923.5**

California Civil Code § 2923.5 requires the lender to contact the borrower, before a notice of default is filed, in person or by phone to "assess" the borrower's financial situation and to "explore" options to prevent foreclosure at least 30 days before recording the default notice. Cal. Civ. Code § 2923.5(a)(1) and (2). A notice of default may be filed without prior contact if there was due diligence to contact the borrower by telephone, certified mail, or other means specified in the statute. Cal Civ. Code 2923.5(g). "[A]ny 'assessment' [by lender] must necessarily be simple – something on the order of, 'why can't you make your payments.'" Mabry v. Superior Court, 185 Cal. App. 4th 208, 232 (2010). The "[e]xploration [is] limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales)." Id. If a mortgagee, beneficiary, or authorized agent fails to comply with § 2923.5, "then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed." Id. at 223. However, section 2923.5 contains "no mandate that the lender extend an offer of loan modification to the borrower or that the lender acquiesce to a request by the borrower for loan modification."

///
///
///
///

7

Rupisan v. JP Morgan Chase Bank, NA, 2012 WL 3764022, at *22 (E.D. Cal. Aug. 29, 2012); see also Vega v. JPMorgan Chase Bank, 654 F. Supp. 2d 1104, 1113 (E.D. Cal.2009) (concluding that section 2923.5 imposes no mandate for loan modification, only contacts or attempted contacts with borrower to "assess the borrower's financial situation and explore options" in assisting the borrower in avoiding foreclosure).

In his FAC, Plaintiff alleges that the Notice of Default was recorded without Defendants complying with Section 2923.5. (FAC ¶ 90.) For their part, Defendants rely on the statement certifying compliance with the contact requirements of Section 2923.5 attached to the Notice of Default. (RJN, Ex. N.) According to the statement, the lender has tried with due diligence to contact Plaintiff. (Id.) Additionally, Defendants argue that Plaintiff's Section 2923.5 claim fails because Plaintiff has already received the benefits of the statute by virtue of being offered a loan modification. (ECF No. 24, at 7.)

It is in fact troubling that Plaintiff alleges Defendants' failure to contact him while at the same time alleging that he actually received two loan repayment/modification offers and eventually entered into a Loan Modification Agreement with Defendants. (See FAC ¶¶ 39-45; RJN, Ex. K.) A letter from IndyMac Federal Bank, FSB, to Plaintiff, dated October 8, 2008, specifically references that Defendants discussed repayment options with Plaintiff over the phone. (FAC, Ex. H.) Plaintiff himself alleges that he and Defendants engaged in lengthy loan modification negotiations starting in August 2008, and that the Notice of Default was not recorded until July 5, 2011. (FAC ¶¶ 39-44, 80.) Thus, it appears that Defendants did explore potential options that would assist Plaintiff in avoiding foreclosure and in fact agreed to allow Plaintiff, first, a repayment plan, and subsequently a loan modification designed to prevent foreclosure proceedings on Plaintiff's property, thus complying with Section 2923.5's requirements.

///
///
///
///

1  See Derusseau v. Bank of Am., N.A., 2012 WL 1059928, at *8 (S.D. Cal. March 28,
2  2012) (concluding that defendants complied with Section 2923.5 where they "engaged in
3  lengthy modification efforts" before recording the notice of default); Davenport v. Litton
4  Loan Serv., LP, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010) (dismissing § 2923.5 claim
5  because plaintiffs' allegation of loan modification discussions with the lender negated a
6  claim that § 2923.5 had been violated); Mueller v. Bank of Am., N.A., 2012 WL 3134243,
7  at *8 (S.D. Cal. Aug. 1, 2012) (dismissing plaintiff's Section 2923.5 claim where the
8  lender engaged in extensive loan modification negotiations with the plaintiff); Brown v.
9  U.S. Bancorp, 2012 WL 665900, at *7 (C.D. Cal. Feb. 27, 2012) ("Because plaintiffs
10  admit that they discussed loan modifications with [the lender] well before the notice of
11  default was recorded, their allegation that defendants failed to comply with § 2923.5
12  fails.").
13      The essence of Plaintiff's claim here appears to be his dissatisfaction with
14  Defendant's refusal to allow any further loan modification.  However, as mentioned
15  above, Section 2923.5 does not provide a borrower with any rights to a loan
16  modification.  Accordingly, the Court finds that Plaintiff is unlikely to succeed on the
17  merits of a cause of action premised on a violation of Cal. Civil Code § 2923.5.
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff has not demonstrated that he is likely to succeed on the merits of his claims or that there are serious questions going to the merits of Plaintiff's claims.  Accordingly, Plaintiff's Ex Parte Application for a Temporary Restraining Order (ECF No. 22) is DENIED. [3]

IT IS SO ORDERED.

Dated:  January 9, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

10