1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   GREGORY REY,                          No.  2:12-cv-02078-MCE-GGH

12              Plaintiff,

13       v.                                 **MEMORANDUM AND ORDER**

14   ONEWEST BANK, FSB, et al.,

15              Defendants.

16

17                        ----oo0oo----

18         Plaintiff Gregory Rey brought this action in state court seeking redress for a litany

19   of statutory and common law violations arising from the origination of his home mortgage

20   and subsequent foreclosure proceedings.  (Defs.' Notice of Removal, ECF No. 1, Ex. 3.)

21   Defendants thereafter removed the action to this Court on the basis of the federal

22   question jurisdiction pursuant to 28 U.S.C. §1441(b).  (ECF No. 1.)  Subsequently,

23   Plaintiff filed his operative First Amended Complaint ("FAC").  (ECF No. 8.)  Currently

24   before the Court is a Motion to Dismiss Plaintiff's FAC and a Motion to Expunge Notice

25   of Pending Action (Lis Pendens) filed by Defendants OneWest Bank, FSB ("OneWest")

26   and Federal National Mortgage Association.  (ECF Nos. 12, 14).[1]

27   _____

28         [1] Because oral argument would not be of material assistance, the Court ordered this matter
     submitted on the briefing.  E.D. Cal. R. 230(g).

                                            1

1  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED, with leave to

2  amend, with respect to Plaintiff's federal claims.  The Court refuses to exercise

3  supplemental jurisdiction over Plaintiff's state-law claims until and unless Plaintiff can

4  assert a cognizable federal claim and DISMISSES Plaintiff's state-law claims without

5  prejudice.  Because the merits of Defendants' Motion to Expunge Lis Pendens depend

6  on whether Plaintiff can assert a viable state-law claim, the Court declines to rule on that

7  motion at this time and DENIES it without prejudice.

8

9                                    **BACKGROUND**[2]

10

11        In May 2006, Plaintiff obtained a Home Mortgage Loan ("Loan") from American

12  Mortgage Network, Inc. ("American"), secured by a Deed of Trust in the amount of

13  $373,104.00 for Plaintiff's primary residence ("Property") located in Escalon, California.

14  (FAC ¶ 20.)  Defendant OneWest is the current owner of Plaintiff's Loan, through

15  Assignment recorded on June 21, 2010.  (Id. ¶ 2, Ex. A.)  Plaintiff alleges OneWest is a

16  successor in interest to American and is thus liable for American's wrongdoing.  (Id. ¶ 4.)

17        As alleged, prior to obtaining the Loan, Plaintiff contacted an agent from West

18  Coast Mortgage to inquire about a mortgage for the purchase of his home.  (Id. ¶ 22.)

19  Plaintiff explained to the agent that he wanted a 30-year fixed rate loan.  (Id.)  The agent

20  inquired about Plaintiff's employment and income, to which Plaintiff responded that he

21  earned approximately $4,000.00 per month as a press operator.  (Id. ¶ 24.)  According to

22  Plaintiff, he never filled out or signed a loan application during the loan origination

23  process, and the whole process of signing the Loan documents took only 15 minutes.

24  (Id. ¶¶ 25-26.)  On the day of signing the Loan documents, Plaintiff allegedly discovered

25  that the interest rate on the Loan (6.5%) was higher than he expected.  (Id. ¶ 26.)

26  ///\

27  _____

28  [2] Unless otherwise noted, the following facts are taken from Plaintiff's First Amended Complaint ("FAC"), attached as Exhibit 3 to Defendants' Notice of Removal (ECF No. 1.)

1   However, because Plaintiff had already deposited $90,000.00 in Escrow and was

2   allegedly told that he would lose it if he did not sign the Loan documents, he agreed to

3   the proposed interest rate.  (Id. ¶¶ 26-27.)  The agent allegedly stated that Plaintiff could

4   always refinance his Loan later.  (Id. ¶ 27.)

5           The Note, which documented the Loan terms and which Plaintiff signed in May

6   2006, clearly states on its first page "INTEREST ONLY FIXED RATE NOTE."  (FAC,

7   Ex. F.)  Plaintiff's obligation to repay the Loan was established in the Note as follows:

8   (1) Plaintiff was to pay interest only of $2,020.98 for the first ten years; and (2) beginning

9   on June 2016 and continuing until June 2036, Plaintiff was to pay principal and interest

10  in the amount of $2,781.77.  (Id.)  Plaintiff also signed a TILA Disclosure Statement

11  which set forth the above payment schedule, and which Plaintiff acknowledged he had

12  read and received.  (FAC, Ex. G.)  However, in his FAC, Plaintiff alleges that Defendants

13  failed to disclose to him the following material terms of the Loan: (1) the Loan was not a

14  30-year fixed interest loan, but a 10-year interest only fixed mortgage loan; (2) the Loan

15  would result in a significant loss of equity in Plaintiff's home causing Plaintiff to owe more

16  money than he did at the outset of the Loan; and (3) the monthly payments would

17  increase beginning in the eleventh year of the Loan.  (Id. ¶¶ 2, 28.)  Also, as alleged,

18  Plaintiff was not provided with any other options or alternative payment schedules before

19  signing the Loan documents.  (Id. ¶ 2.)  Additionally, Plaintiff alleges that he "recently"

20  discovered that his monthly gross income was listed as $8,695.00, which is much higher

21  than his actual monthly income of approximately $4,000.00.  (Id. ¶ 28.)  According to

22  Plaintiff, he "had no way of uncovering the truth" about the Loan's material terms until

23  October 7, 2011, when the Notice of Trustee's Sale was recorded.  (Id. ¶¶ 2, 118.)

24          In August 2008, it became "apparent" to Plaintiff that he would not be able to

25  continue making payments on the Loan.  (Id. ¶ 34.)  Plaintiff called IndyMac Bank, FSB

26  ("IndyMac"), which was the servicer of Plaintiff's Loan, for assistance in avoiding

27  potential foreclosure.  (Id. ¶¶ 5, 35.)  IndyMac's representative allegedly advised Plaintiff

28  that Plaintiff needed to be delinquent on his Loan to qualify for any type of assistance.

3

1   (Id. ¶ 35.)  Subsequently, Plaintiff applied for a loan modification with IndyMac.  (Id.

2   ¶ 37.)  On October 8, 2008, Plaintiff received a letter stating that he was approved for a

3   repayment plan with IndyMac.  (Id. ¶ 37.)  Because Plaintiff remained in default, the then

4   trustee, Quality, recorded a Notice of Default.  (Defs.' Request for Judicial Notice[3]

5   ("RJN"), ECF No. 13, Ex. F.))

6           According to Plaintiff, the original beneficiary of the deed of trust, Mortgage

7   Electronic Registration Systems ("MERS"), has never assigned its interest in the

8   Property to Quality.  (FAC ¶ 7.)  As alleged, there has been no substitution of trustee

9   recorded from MERS naming Quality as the new trustee.  (Id.)  Therefore, according to

10  Plaintiff, Quality's filing of a Notices of Default, recorded on March 10, 2009 and July 5,

11  2011, should be declared void.  (Id.)  However, Quality's substitution as trustee is

12  evidenced by the recorded Substitution of Trustee, dated March 9, 2009.  (RJN, Ex. G.)

13          On August 10, 2009, Plaintiff received a letter from OneWest stating that

14  OneWest was establishing an escrow account and that Plaintiff's payments would

15  constitute $2,454.70 as of October 2009.  (FAC ¶ 38.)  On September 23, 2010, Plaintiff

16  received a letter from IndyMac, stating that OneWest had approved Plaintiff's Loan

17  modification.  (Id. ¶ 39.)  Plaintiff agreed to the modification terms, signed the agreement

18  and sent it back to OneWest as directed.  (Id.)  The Loan's modified payments were set

19  forth in the Modification Agreement.  (RJN, Ex. K.)  Plaintiff made the payments as

20  agreed until he lost his job about four months later.  (FAC ¶ 39.)  Plaintiff contacted

21  OneWest and asked for a new loan modification, but OneWest refused.  (Id.)

22  ///

23

24          [3] Defendants have filed a request seeking judicial notice under Federal Rule of Civil Procedure
    201 of several recorded documents related to Plaintiff's Loan and the foreclosure proceedings on Plaintiff's
25  Property.  (ECF No. 13.)  Plaintiff has not objected to Defendants' request or challenged the authenticity or
    accuracy of any of the attached documents.  The Court "may take judicial notice of 'matters of public
26  record' without converting a motion to dismiss into a motion for summary judgment."  Lee v. City of L.A.,
    250 F.3d 668, 689 (9th Cir. 2001).  The documents attached as exhibits to Defendants' RJN contain
27  judicially noticeable public documents.  Because Plaintiff does not dispute the authenticity or accuracy of
    the presented documents and the accuracy of the documents cannot reasonably be questioned,
28  Defendant's RJN is GRANTED.

4

1    Because Plaintiff could not make his monthly payments, he defaulted on the Loan

2    Modification Agreement.  (Id.)  After defaulting on his Loan, Plaintiff kept calling and

3    writing to OneWest attempting to obtain a new loan modification.  (Id. ¶ 41.)  However,

4    after several letters requesting Plaintiff to submit additionally documents, on November

5    1, 2011, OneWest denied Plaintiff's loan modification request "due to imminent

6    foreclosure sale of property."  (Id. ¶¶ 40-45.)

7         On March 6, 2012, Plaintiff allegedly sent OneWest a Qualified Written Request

8    ("QWR") and also sent Quality a validation of debt ("VOD").  (Id. ¶ 101.)  According to

9    Plaintiff, Defendants failed to respond to Plaintiff's correspondence.  (Id. ¶¶ 101-103.)

10        On May 29, 2012, Plaintiff filed his original complaint in the Superior Court of the

11   State of California, County of San Joaquin.  (ECF No. 1, Ex. 1.)  On August 8, 2012,

12   Defendants removed the action to this Court on the basis of the federal question

13   jurisdiction and supplemental jurisdiction.  (ECF No. 1.)  On September 24, 2012,

14   Plaintiff filed the operative FAC asserting the following causes of action: (1) fraud in

15   origination of the loan; (2) wrongful foreclosure in violation of Cal. Civil Code § 2923.5;

16   (3) violation of the Real Estate Settlement Procedures Act ("RESPA"); (4) violation of the

17   Truth-In-Lending Act ("TILA"); (5) rescission; (6) predatory lending in violation of Cal.

18   Bus. & Prof. Code § 17200; (7) unfair and deceptive business practices; (8) preliminary

19   and permanent injunction; and (8) quiet title.  (ECF No. 8.)

20

21                                  **LEGAL STANDARD**

22

23        On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

24   allegations of material fact must be accepted as true and construed in the light most

25   favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

26   (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim

27   showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

28   what the . . . claim is and the grounds upon which it rests."

1    Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and

2    quotations omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss

3    does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

4    of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

5    recitation of the elements of a cause of action will not do."  Id. at 555 (internal citations

6    and quotations omitted).

7         A plaintiff's factual allegations must be enough to raise a right to relief above the

8    speculative level.  Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure

9    § 216, at 235-36 (3d ed. 2004) ("The pleading must contain something more . . . than . .

10   . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

11   action")).

12        Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion

13   of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see

14   how a claimant could satisfy the requirements of providing not only 'fair notice' of the

15   nature of the claim, but also 'grounds' on which the claim rests."  Twombly, 550 U.S. at

16   555, n.3 (internal citations omitted).  A pleading must contain "only enough facts to state

17   a claim to relief that is plausible on its face."  Id. at 570; see also Ashcroft v. Iqbal,

18   556 U.S. 662, 677-679 (2009).  If the "plaintiffs . . . have not nudged their claims across

19   the line from conceivable to plausible, their complaint must be dismissed."  Twombly,

20   550 U.S. at 570; Iqbal, 556 U.S. at 680.

21        A court granting a motion to dismiss a complaint must then decide whether to

22   grant leave to amend.  Rule 15(a) empowers the court to freely grant leave to amend

23   when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . .

24   undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the

25   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  However, leave to amend

26   is generally denied when it is clear the deficiencies of the complaint cannot be cured by

27   amendment.

28   ///

1   DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v.

2   Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should not be

3   dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can

4   prove no set of facts in support of his claim which would entitle him to relief.") (internal

5   citations omitted).

6

7                                          **ANALYSIS**

8

9          According to Defendants' Notice of Removal, the Court's subject-matter

10  jurisdiction over this action is based on Plaintiff's federal claims under TILA and RESPA.

11  (ECF No. 1, at 2.)  Because the Court's jurisdiction depends on the viability of Plaintiff's

12  federal claims, the Court will analyze those first before proceeding to Plaintiff's state-law

13  causes of action.

14

15         **A.      Plaintiff's RESPA claim**

16

17         Under RESPA, servicers of federally related mortgage loans are required to abide

18  by certain disclosure obligations.  See 12 U.S.C. § 2605.  Among these obligations is the

19  duty to respond to a QWR submitted by a borrower.  See 12 U.S.C. § 2605(e).  A QWR

20  is (1) a written correspondence, (2) that identifies the name and account of the borrower,

21  and (3) states the reasons why the borrower believes the account is in error or provides

22  sufficient detail to the servicer regarding other information sought by the borrower.

23  12 U.S.C. § 2605(e)(1)(B).  A servicer must acknowledge receipt of a QWR within twenty

24  days of receiving it, and must provide to the borrower within sixty days of receiving the

25  QWR a written explanation of the reasons why the account is or is not in error.

26  12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2).

27         On March 6, 2012, Plaintiff allegedly sent OneWest a Qualified Written Request

28  ("QWR").  (FAC ¶ 101.)

                                              7

1  According to Plaintiff, OneWest failed to respond to Plaintiff's QWR in violation of 12

2  U.S.C. §2605(e).  (FAC ¶¶ 101-103.)  However, contrary to Plaintiff's allegation in the

3  FAC, OneWest did respond to Plaintiff's "QWR" within the statutory time as evidenced by

4  OneWest's letter to Plaintiff, dated March 16, 2012.  (See FAC, Ex. B.)  Therefore,

5  Plaintiff's RESPA claim against OneWest fails.

6      Plaintiff further alleges that, on March 6, 2012, he sent Quality a Validation of

7  Debt ("VOD") and that Quality failed to respond to VOD in violation of 12 U.S.C.

8  § 2605(e).  However, as explained above, RESPA's requirement to respond to a

9  borrower's requests applies only to loan servicers.  See 12 U.S.C. § 2605(e).  Because

10  Quality is not a servicer but a trustee under the Deed of Trust, as evidenced by a

11  recorded Substitution of Trustee,[4] (see RJN, Ex. G), it is not subject to the requirements

12  of Section 2605(e).

13      Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's RESPA

14  claim with leave to amend.

15

16      **B.    Plaintiff's TILA claim**

17

18      According to Plaintiff, Defendants violated TILA "by failing to provide Plaintiff with

19  accurate material disclosures required under TILA."  (FAC ¶ 112.)  As alleged,

20  Defendants failed to disclose multiple material terms of the Loan agreement and also

21  failed to provide the Loan documents to Plaintiff until after the Loan transaction "was

22  entered into, signed, recorded, and completed."  (FAC ¶¶ 2,  113.)

23  ///

24  _____

25      [4] Plaintiff disputes that Quality is a legitimate trustee under the Deed of Trust.  According to Plaintiff, the original beneficiary of the deed of trust, Mortgage Electronic Registration Systems ("MERS") has never assigned its interest in the Property to Quality.  (FAC ¶ 7.)  Thus, Plaintiff argues, there has

26  been no substitution of trustee recorded from MERS naming Quality as the new trustee.  (FAC ¶ 7.)

27  Therefore, according to Plaintiff, Quality's filing of a Notice of Default, recorded on March 10, 2009 and again on July 5, 2011, should be declared void.  (FAC ¶ 7.)  However, regardless of whether the substitution of trustee was valid, nothing in the FAC suggests that Quality is or at any point was a servicer

28  of Plaintiff's loan, which is a prerequisite to any liability for violation of 12 U.S.C. § 2605(e).

1    TILA bars any recovery of monetary damages after one year from the occurrence

2    of the violation.  15 U.S.C. 1640(e) ("Any action under this section may be brought . . .

3    within one year from the date of the occurrence of the violation . . ."); King v. California,

4    784 F.2d 910, 913 (9th Cir. 1986).  Generally, "[t]he failure to make the required

5    disclosures occur[s], if at all, at the time the loan documents were signed."  Meyer v.

6    Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).  However, district courts may

7    use their discretion to evaluate specific claims of fraudulent concealment and toll the

8    statute of limitations when the general rule would be unjust or frustrate the Act's

9    purpose.  King, 784 F.2d at 915.

10    Here, Plaintiff signed the Loan documents in May 2006, more than six years prior

11    to filing his original complaint.  However, Plaintiff argues that the statutory period should

12    be tolled because he could not have reasonably discovered the alleged wrongdoing until

13    October 7, 2011, when the Notice of Trustee's Sale was recorded.  (FAC ¶¶ 117-118.)

14    To rely on the delayed discovery of a claim, "[a] plaintiff whose complaint shows on its

15    face that his claim would be barred without the benefit of the discovery rule must

16    specifically plead facts to show (1) the time and manner of discovery and (2) the inability

17    to have made earlier discovery despite reasonable diligence."  Kelley v. Countrywide

18    Home Loans, 2009 WL 3489422, *5 (E.D. Cal. Oct. 26, 2009) (internal citations omitted).

19    Consequently, "when a plaintiff fails to allege any facts demonstrating that the TILA

20    violations alleged could not have been discovered by due diligence during the one-year

21    statutory period, equitable tolling should not be applied and dismissal at the pleading

22    stage is appropriate."  Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1147 (E.D.

23    Cal. 2010).  Thus, while the Court has discretion to toll the statutory period, Plaintiff must

24    demonstrate that he exercised "reasonable diligence" in discovering Defendants' alleged

25    wrongdoing.  See Kelley, 2009 WL 3489422, at *5.  Plaintiff has failed to do so.

26    The Note, which Plaintiff signed and which he attached as Exhibit F to the FAC,

27    clearly states "INTEREST ONLY FIXED RATE NOTE."  (FAC, Ex. F.)

28    ///

1   The Loan terms, which Plaintiff claims had not been disclosed to him by the lender,

2   appear clearly on the face of the pages of the Loan documents that Plaintiff signed or

3   initialed.  (Id.).  A reasonably diligent person would have read the loan's material terms

4   upon signing, or, at a minimum, after receiving the loan documents.  See Tiqui v. First

5   Nat'l Bank of Ariz., 2010 WL 1345381, *6 (S.D. Cal. Apr. 5, 2010).  Thus, it was not

6   reasonable for Plaintiff to wait until the Notice of Trustee's Sale before first examining the

7   loan papers and material loan terms.  See Hubbard v. Fid. Fed. Bank, 91 F.3d 75, 79

8   (9th Cir. 1996) (the plaintiff was not entitled to equitable tolling of her TILA claim because

9   "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial

10   disclosures, and TILA's statutory and regulatory requirements").

11       Because Plaintiff has failed to persuade the Court that the statute of limitations

12   should be tolled, his TILA claim for damages fails as a matter of law.  Accordingly, the

13   Court grants Defendants' Motion to Dismiss Plaintiff's TILA claim.[5]  Although it appears

14   that amendment would be futile because Plaintiff's TILA claim is time-barred, the Court

15   will allow Plaintiff to amend his pleading in light of the liberal policy favoring amendment.

16   See Foman, 371 U.S. at 182; DeSoto v. Yellow Freight System, Inc., 957 F.2d 655, 658

17   (9th Cir.1992).

18   ///

19   ///

20   ///

21   ///

22   ///

23

24

25

26

27

28

[5] In addition to bringing a claim for damages under TILA, Plaintiff also alleges, in his fourth cause of action, that he is eligible for rescission of his Loan under TILA because Defendants "failed to properly disclose the details of the Loan, including the Loan terms, that the principal balance would increase and that the Loan payment would increase."  (FAC ¶ 127.)  Rescission claims under TILA expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. 15 U.S.C. § 1635(f).  However, equitable tolling does not apply to rescission under this provision regardless of the lender's disclosures.  King v. California, 784 F.2d 910, 914 (9th Cir. 1986) ("Congress placed a three year absolute limit on rescission actions.").  Because Plaintiff's Loan was consummated in 2006, and the original complaint in this action was not filed until 2012, the claim for rescission under TILA is also time-barred as a matter of law.

1

2

### C.     Remaining State-Law Claims

3       Having dismissed Plaintiff's federal claims, the Court determines that the FAC

4    presents no basis for federal question or diversity jurisdiction and declines to exercise

5    supplemental jurisdiction over Plaintiff's state-law claims at this time.  See 28 U.S.C.

6    § 1367(c).  Accordingly, the Court dismisses Plaintiff's state-law claims without prejudice.

7

### D.     Defendants' Motion to Expunge Lis Pendens

8

9

10      In addition to filing a motion to dismiss, Defendants have also moved to expunge

11   the lis pendens recorded by Plaintiff.[6]  (ECF No. 14.)  Because the merits of Defendants'

12   motion to expunge lis pendens depend on the viability of Plaintiff's state law claims, the

13   Court declines to rule on Defendants' motion at this time and denies it without prejudice.

14

15                                   **CONCLUSION**

16

17      As a matter of law, and for the reasons set forth above, the Court:

18   1.  GRANTS, with leave to amend, Defendants' Motion to Dismiss Plaintiffs'

19         federal claims under RESPA and TILA.

20   2.  Declines to exercise supplemental jurisdiction over Plaintiff's remaining state-

21         law claims at this time and DISMISSES those claims without prejudice.

22   3.  DENIES Defendants' Motion to Expunge Lis Pendens without prejudice.

23   ///

24

25         [6] "A lis pendens is recorded by someone asserting a real property claim, to give notice that a lawsuit has been filed which may, if that party prevails, affect the title to or possession of the real property

26   described in the notice." Fed. Deposit Ins. Corp. v. Charlton, 17 Cal. App. 4th 1066, 1069 (1993).  "Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is

27   resolved or the lis pendens is expunged." BGJ Assocs., LLS v. Superior Court, 75 Cal. App. 4th 952, 967 (1999).  A court should expunge a lis pendens if it determines that "the pleading on which the notice is based does not contain a real property claim," or if a real property claim "as pled lacks evidentiary merit."

28   Park 1000 Inv. Group II v. Ryan, 180 Cal.App.4th 795, 808 (2009).

1    Plaintiff is directed to file a Second Amended Complaint, should he choose to do

2  so, within twenty (20) days from the date this Order is electronically filed.  If no amended

3  pleading is filed within 20 days, the Court will dismiss this action with prejudice with no

4  further notice to Plaintiff.

5    IT IS SO ORDERED.

6

7  Dated:  January 8, 2013

8    MORRISON C. ENGLAND, JR. CHIEF JUDGE

9    UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28